IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARILYN OLSON,                              05-CV-1296-BR

       Plaintiff,                       OPINION AND ORDER

v.

TOMMY TENNEY, MARK OLSEN, and
BAKER BOOK HOUSE COMPANY,

       Defendants.

**RANDAL B. ACKER**
**AARON S. FERREIRA**
Acker & Associates, P.C.
Jackson Tower, Fifth Floor
806 S.W. Broadway, Suite 550
Portland, OR  97205
(503) 228-2495

       Attorneys for Plaintiff

**WILLIAM O. GENY**
**SUSAN D. PITCHFORD**
Chernoff, Vilhauer, McClung & Stenzel, LLP
601 S.W. Second Avenue, Suite 1600
Portland, OR  97204
(503) 227-5631

**JAY S. BOWEN**
**AMY E. NEFF**
Bowen Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700

**MICHAEL J. KING**
Winters, King & Associates, Inc.
2448 East 81st Street
Cityplex Towers, Suite 5900
Tulsa, OK  74137
(918) 494-6868

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion for Summary Judgment (#34).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


<u>**BACKGROUND**</u>

**I.    Parties**

    Plaintiff is a resident of Oregon and a playwright, composer, and director.

    Defendant Tommy Tenny is a resident of Louisiana and a minister of the Gospel; a noted author who has sold over 3,000,000 books; a public speaker; and President and Chief Executive Officer of Hope, Direction and Encouragement Ministries, Inc.  Tenny has spent 10 years pastoring and more than 20 years in itinerant ministry.  Tenny's GodChasers

2 - OPINION AND ORDER

television ministry is seen in over 120 countries.

Defendant Mark Olsen is a resident of Colorado and a professional writer and novelist.

Defendant Baker Book House Company is a Michigan corporation.  Baker Book House concentrates on publishing religious literature.

## II.  Facts Giving Rise to this Action

In 1994 Plaintiff wrote and copyrighted an eighty-page musical play entitled *Hadassah* based on the Book of Esther from the Bible.  At various times Plaintiff sent videos of her play to the Trinity Broadcasting Network (TBN) and other nondefendants. Usually the videos were returned to her.

In late 1999 or early 2000, Plaintiff called one of TBN's 800 numbers and asked the person who answered the phone whether TBN "would be interested in *Hadassah*."  The individual at TBN referred Plaintiff to another 800 number, which she called and left a message.  At her deposition, Plaintiff testified "a man" called her back:

> I have a clear recollection of them transferring
> me - giving me another number that was to their
> employee that was head of this department.  The
> name "Tommy Tenny" itself I do not have a clear
> recollection of. . . .  I didn't really care who
> the person was.  I thought I was talking to TBN
> and their representative.

Plaintiff does not have any record of the telephone numbers or of the calls.

3 - OPINION AND ORDER

Plaintiff sent a video of *Hadassah*, the *Hadassah* script, a brochure for *Hadassah*, and a coloring book to the man who called her back.  Plaintiff does not have a copy of her cover letter and does not remember to whom she addressed the script and other materials.  Plaintiff testified at her deposition that she was not sure Tommy Tenny was the individual to whom she sent her materials.

On December 7, 2000, Plaintiff posted two messages on the GodChasers Network website in which she stated:

> Please let me know if you wanted to see a copy of
> the new musical named "Hadassah".  This is the
> story of Esther, 2 hours, 20 minutes long . . . .
> Funny, accurate, and extremely entertaining, you
> might want to consider it for your full length
> feature film.  I can send you a copy of the script
> and music.
>
> * * *
>
> You can view pictures of the Hadassah musical on
> the website at www.mcoproductions.com

Plaintiff testified she did not reference the items previously sent because she was not sure to whom she directed them.

On December 28, 2000, Jenni Baier of GodChasers Network emailed a response to Plaintiff in which she noted:

> I would be interested in hearing more about the
> musical "Hadassah."  I visited the website, but it
> seem to be mostly "old" information.  Is it
> currently being performed anywhere?  Are there
> videos available?  I am especially interested in
> finding credible sources that will help us set the
> historical context for the story.

Plaintiff did not respond to Baier's email, and the email was

4 - OPINION AND ORDER

deleted.

In 2002 Tenny approached Carol Johnson, Vice President and Acquisitions Editor for Bethany House, a division of Baker Book House, about writing a novel based on the Book of Esther. Johnson agreed a novel and a nonfiction book on the subject should be written.  On October 22, 2002, Tenny began to work on the novel with Mark Olsen.  Among other things, Tenny and Olsen discussed Persian and Jewish history, Jewish teachings, and the circumstances in which a young Jewish girl like Esther would have been raised as an orphaned exile in Persia during the Fourth Century, B.C.

After the October 2002 meeting, Olsen created a manuscript based on historical reference materials, the Book of Esther, and the ideas he and Tenny discussed at their meeting.  Johnson supervised the cover design of the novel and suggested it be named *Hadassah*.  The novel was published in 2004.

On August 18, 2005, Plaintiff filed an action in this Court alleging copyright infringement by Tenny, Olsen, and Baker Book House relating to the novel *Hadassah* and various derivative works including a children's version, a Spanish translation, and an audio book recording of *Hadassah*.

On July 6, 2006, Defendants filed a Motion for Summary Judgment.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Easter v. Am. W. Fin.* 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No.1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come

forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


## DISCUSSION

Defendants contend they are entitled to summary judgment on Plaintiff's claims because a reasonable juror could not conclude Defendants had access to Plaintiff's work or that the novel and derivative works contain any protectable elements substantially similar to Plaintiff's work.

### I.    Copyright-Infringement Standards

To succeed on her copyright-infringement claim, Plaintiff must establish:  (1) ownership of a valid copyright, (2) Defendants' access to the copyrighted work, and (3) substantial similarity between the copyrighted work and Defendants' work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). As to the first element, Defendants concede Plaintiff's ownership of a valid copyright for purposes of their

Motion for Summary Judgment.  With respect to the remaining
elements, if Plaintiff cannot establish Defendants had access to
her work, she can prevail on her copyright claims only by showing
a "striking" similarity between the protected elements in her
materials and the novel and derivative works.  *Smith v. Jackson*,
84 F.3d 1213, 1220 (9th Cir. 1996).  *See also Baxter v. MCA, Inc.*,
812 F.2d 421, 423-24 (9th Cir. 1987).  "Thus, whether . . . a
plaintiff proves access determines the degree of similarity that
[s]he must demonstrate between the two works."  *Meta-Film Assoc.,
Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).

## II.  Plaintiff Has Not Established Defendants Had Access to Plaintiff's Work.

Plaintiff can establish access by showing Defendants "had an
'opportunity to view or to copy' [her] work."  *See Meta-Film*, 586
F. Supp. at 1355 (quoting *Sid & Marty Krofft Television Prods.,
Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)).
A plaintiff may prove reasonable access in two ways:  "(1) a
particular chain of events is established between the plaintiff's
work and the defendant's access to that work . . . or (2) the
plaintiff's work has been widely disseminated."  *Three Boys Music
Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

Plaintiff must show Defendants had more than a "bare
possibility" of access.  *See Jason v. Fonda*, 526 F. Supp. 774,
776 (C.D. Cal. 1981), *incorporated by reference in* 698 F.2d 966
(9th Cir. 1982).  A "tortuous chain of hypothetical transmittals"

8 - OPINION AND ORDER

that creates only a "bare possibility of access" is insufficient to sustain a claim of copyright infringement. *Id*. at 967.

Although Plaintiff does not contend her work was widely disseminated, she maintains Defendants had access to her work. Plaintiff believes she sent her materials to Tenny, and, through Tenny, Mark Olsen and Baker Book House had access to her script, video, and other materials. Plaintiff also contends Olsen is jointly liable in this action because he co-wrote the book with Tenny.

When Plaintiff called the number she was referred to by TBN in 1999 or 2000, a man called her back and told her that he "was just a country preacher that had just got the job." Although Plaintiff testified she "had no idea who he was," she allegedly sent materials that were related to her musical to the man. As noted, Plaintiff cannot remember the address nor does she have a copy of her cover letter transmitting these materials to the man. When she posted her message on the GodChasers message board in December 2000, she was "still unsure about whether or not Tommy Tenny or his organization were even the people that [she had] sent the materials to." Nevertheless, Plaintiff testified she came to believe that Tenny was the man to whom she had spoken and to whom she had sent her materials based on "the tenor of his voice" and the fact that the novel was similar to Plaintiff's musical.

9 - OPINION AND ORDER

Tenny, however, provides evidence that he is not an employee, shareholder, or officer of TBN; has never maintained an office at any TBN location; has never had a telephone number affiliated with TBN through which calls could be transferred to him; does not answer the telephone in his office; does not check his business email himself; and does not review his own business mail. Tenny asserts his contacts with TBN are limited to appearing as a guest on TBN television programs and having his ministry program broadcast by TBN. In addition, Tenny testified he had never spoken to Plaintiff, had never read the script for her musical or seen a video of it, and had never seen any other material referencing Plaintiff's musical. Tenny further testified his staff never provided him with any manuscript or materials prepared by Plaintiff.

Based on this record, the Court concludes Plaintiff's evidence does not establish "a particular chain of events through which Tenny had access to her work. At best, Plaintiff presents only a "tortuous chain of hypothetical transmittals" that merely suggests a "bare possibility of access." *Jason*, 698 F.2d at 967. Accordingly, the Court concludes Plaintiff has not established Defendants had access to her work.

## III. Plaintiff Has Not Established the Novel and Derivative Works Are Strikingly Similar to the Protectable Portions of

10 - OPINION AND ORDER

**Plaintiff's Work.**

Even though Plaintiff has not established Defendants had access to her work, she can establish copyright infringement if she can show the novel and derivative works are strikingly similar to the protectable portions of Plaintiff's work.

A.    **Standards**

To prove copyright infringement without evidence of access, a plaintiff must show the works are strikingly similar in both ideas and expression. *Sid & Marty Krofft*, 562 F.2d at 1164.

Similarity of ideas is shown through an extrinsic test that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works. *Kouf v. Walt Disney Pictures Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Similarity of expression is shown through a subjective, intrinsic test that focuses on "'whether the ordinary, reasonable audience' would find the works [strikingly] similar in the 'total concept and feel of the works.'" *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)(quoting *Kouf*, 16 F.3d at 1045))."

When analyzing a claim of copyright infringement, the Court "must take care to inquire only whether '*the protectible [sic] elements, standing alone*, are substantially similar.' Therefore, . . . a court must filter out and disregard the

11 - OPINION AND ORDER

non-protectable elements in making its substantial similarity determination." *Cavalier*, 297 F.3d at 822 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)(emphasis in original)).

"[C]opyright protection does not extend to historical or contemporary facts, material traceable to common sources or in the public domains, and *scenes a faire*." *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997) (quotations omitted). When "common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement." *Alexander v. Haley*, 460 F. Supp. 40, 45 (S.D.N.Y. 1978).

Copyright protection does not extend to factual aspects of a work. 17 U.S.C. § 102. "No claim of copyright protection can arise from the fact that plaintiff has written about . . . historical and factual items, even if we were to assume that [the alleged infringer] was alerted to the facts in question by reading [the infringed work]." *Alexander*, 460 F. Supp. at 45. "Historical facts and theories may be copied as long as the defendant does not bodily appropriate the expression of the plaintiff." *Narell v. Freeman*, 872 F.2d 907, 911-12 (9th Cir. 1989). "To avoid a chilling effect on authors who contemplate tackling an historical issue or event, broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." *Hoehling v. Universal City*

12 - OPINION AND ORDER

*Studios, Inc.*, 628 F.2d 972, 978 (2d Cir. 1980).  Accordingly, "the scope of copyright in historical accounts is narrow indeed, embracing no more than the author's original expression of the particular facts and theories already in the public domain."  *Id*. at 974.

>    **B.   Analysis**

Plaintiff attached a list of 185 alleged "comparisons" between her musical and the novel.  Although the Ninth Circuit has relied on lists of similarities in the past "for illustrative purposes," the court has recognized they are "inherently subjective and unreliable."  *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)(citing *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 n.5 (9th Cir. 1983)).  The Ninth Circuit has directed district courts to be "particularly cautious where, as here, the list emphasizes random similarities scattered throughout the works."  *Id*. (citation omitted).

>    **1.   Extrinsic Test**

Many of the similarities between the works identified by Plaintiff arise from historical fact.  For example, both works relate the fact that women who were not chosen to be queen to Xerxes, the King of Persia in the Fourth Century, B.C., became his concubines, virtual prisoners, and shut away from friends and family.  In addition, both works reference the fact

13 - OPINION AND ORDER

that wealthy individuals were carried in litters by servants and observe that anyone approaching the Persian king without permission was killed unless the king granted them an immediate pardon. As noted, copyright protection does not extend to such historical facts.

In addition, many of the similarities identified by Plaintiff stem from the common source of the Book of Esther. For example, both works include the Biblical narrative that Hadassah is Esther's Jewish name and that Hadassah changes her name to avoid being revealed as a Jew in the King's palace. The phrase "Who would do such a thing?" appears in both works and is a phrase taken from the Book of Esther. The incident in which Xerxes takes his ring from Haman and gives it to Mordecai and the role of Memucan as a prince and advisor to Xerxes also are taken from the Book of Esther. As noted, copyright protection does not extend to material from common sources or "in the public domain."

Plaintiff also identifies similarities between the two works that are considered *scenes a faire*: *i.e.*, "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *See Alexander*, 460 F. Supp. at 45. For example, both works note Mordecai, Hadassah's relative and guardian, teaches her about her Jewish history and Jewish traditions. Similarly, both works include the theme of Hadassah's growing awareness of

and faith in God, a standard development in a work based on a book of the Bible. *Scenes a faire* are not protectable material. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).

Plaintiff also alleges the novel's inclusion of the words "wonderful," "joy," and "his presence fills the air" when referring to Hadassah's feelings about God violate Plaintiff's copyright. In a work based on a book of the Bible, however, a character's feelings about God are likely to include joy or wonder when the character believes God is near. In addition, scenes in which the queen candidates fight over jewels and clothing and that describe the sadness of the concubines who are not selected for queen are *scenes a faire* "that necessarily result from the choice of a setting or situation." *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 92 (2d Cir. 1976).

Plaintiff's list of similarities also includes metaphors or cliched language, which like "phrases and expressions conveying an idea that can only be, or is typically expressed in a limited number of stereotyped fashions," are not subject to copyright protection. *Id.* (citing *Reyher*, 533 F.2d at 91). For example, both works include phrases such as "Your Majesty," which is not unusual when a primary character is the King of Persia, and the phrase "fallen in love," which is common in stories about characters who discover love.

On this record, the Court concludes the similarity of ideas

15 - OPINION AND ORDER

between Plaintiff's musical and the novel and its derivative works arise from a common source, historical facts, *scenes a faire*, and cliched language rather than from any protectable ideas or expressions.  Accordingly, a reasonable juror could not conclude Defendants infringed any protectable ideas or expressions of Plaintiff's musical.

> **2. Intrinsic Test**

"To constitute infringement of expression, [in the absence of evidence of access], the total concept and feel and of the works must be [strikingly] similar." *Litchfield*, 736 F.2d at 1357.  Here the concept and feel of the works at issue are completely different.  Although both works follow the plot of the Book of Esther, Plaintiff's rendition is a short musical that Plaintiff describes as "[f]unny" in her posting on the GodChasers message board.  Plaintiff's musical devotes little time to Hadassah's youth or candidacy for queen.  In addition, the townspeople in Plaintiff's musical relate through song that Hadassah's parents died of terminal illnesses within a week of each other.  Hadassah also is selected as a candidate for queen, and Mordecai is honored that this gift was bestowed on his family.  The novel, in contrast, is a lengthy and serious period drama.  In the novel, considerable time is devoted to Hadassah's youth and descriptions of the full year between her candidacy and her one night with Xerxes.  In the novel, Hadassah witnesses the

murder of her entire family by Haman, a group of palace soldiers order Hadassah to become a queen candidate, Mordecai begs for Hadassah's exemption to no avail, and Hadassah is escorted to Xerxes' castle by soldiers.  Also, Hadassah's selection as queen differs substantially between the two works both in process and tone.

In summary, the Court concludes a reasonable juror could not find a striking similarity of either expression or ideas between Plaintiff's work and Defendants' novel and derivative works because Plaintiff has failed to prove the elements of her claim for copyright infringement.

Accordingly, the Court grants Defendants' Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#34).

IT IS SO ORDERED.

DATED this 9th day of November, 2006.


                                    /s/ Anna J. Brown

                                    _____
                                    ANNA J. BROWN
                                    United States District Judge


17 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARILYN OLSON,                                    05-CV-1296-BR

       Plaintiff,                              OPINION AND ORDER

v.

TOMMY TENNEY, MARK OLSEN, and
BAKER BOOK HOUSE COMPANY,

       Defendants.


**RANDAL B. ACKER**
**AARON S. FERREIRA**
Acker & Associates, P.C.
Jackson Tower, Fifth Floor
806 S.W. Broadway, Suite 550
Portland, OR  97205
(503) 228-2495

       Attorneys for Plaintiff

**WILLIAM O. GENY**
**SUSAN D. PITCHFORD**
Chernoff, Vilhauer, McClung & Stenzel, LLP
601 S.W. Second Avenue, Suite 1600
Portland, OR  97204
(503) 227-5631


1 - OPINION AND ORDER

**JAY S. BOWEN**
**AMY E. NEFF**
Bowen Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700

**MICHAEL J. KING**
Winters, King & Associates, Inc.
2448 East 81st Street
Cityplex Towers, Suite 5900
Tulsa, OK  74137
(918) 494-6868

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion for Summary Judgment (#34).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


<u>**BACKGROUND**</u>

**I.   Parties**

    Plaintiff is a resident of Oregon and a playwright, composer, and director.

    Defendant Tommy Tenny is a resident of Louisiana and a minister of the Gospel; a noted author who has sold over 3,000,000 books; a public speaker; and President and Chief Executive Officer of Hope, Direction and Encouragement Ministries, Inc.  Tenny has spent 10 years pastoring and more than 20 years in itinerant ministry.  Tenny's GodChasers

2 - OPINION AND ORDER

television ministry is seen in over 120 countries.

Defendant Mark Olsen is a resident of Colorado and a professional writer and novelist.

Defendant Baker Book House Company is a Michigan corporation.  Baker Book House concentrates on publishing religious literature.

## II.  Facts Giving Rise to this Action

In 1994 Plaintiff wrote and copyrighted an eighty-page musical play entitled *Hadassah* based on the Book of Esther from the Bible.  At various times Plaintiff sent videos of her play to the Trinity Broadcasting Network (TBN) and other nondefendants. Usually the videos were returned to her.

In late 1999 or early 2000, Plaintiff called one of TBN's 800 numbers and asked the person who answered the phone whether TBN "would be interested in *Hadassah*."  The individual at TBN referred Plaintiff to another 800 number, which she called and left a message.  At her deposition, Plaintiff testified "a man" called her back:

> I have a clear recollection of them transferring
> me - giving me another number that was to their
> employee that was head of this department.  The
> name "Tommy Tenny" itself I do not have a clear
> recollection of. . . .  I didn't really care who
> the person was.  I thought I was talking to TBN
> and their representative.

Plaintiff does not have any record of the telephone numbers or of the calls.

3 - OPINION AND ORDER

Plaintiff sent a video of *Hadassah*, the *Hadassah* script, a brochure for *Hadassah*, and a coloring book to the man who called her back.  Plaintiff does not have a copy of her cover letter and does not remember to whom she addressed the script and other materials.  Plaintiff testified at her deposition that she was not sure Tommy Tenny was the individual to whom she sent her materials.

On December 7, 2000, Plaintiff posted two messages on the GodChasers Network website in which she stated:

> Please let me know if you wanted to see a copy of the new musical named "Hadassah".  This is the story of Esther, 2 hours, 20 minutes long . . . . Funny, accurate, and extremely entertaining, you might want to consider it for your full length feature film.  I can send you a copy of the script and music.
>
>                * * *
>
> You can view pictures of the Hadassah musical on the website at www.mcoproductions.com

Plaintiff testified she did not reference the items previously sent because she was not sure to whom she directed them.

On December 28, 2000, Jenni Baier of GodChasers Network emailed a response to Plaintiff in which she noted:

> I would be interested in hearing more about the musical "Hadassah."  I visited the website, but it seem to be mostly "old" information.  Is it currently being performed anywhere?  Are there videos available?  I am especially interested in finding credible sources that will help us set the historical context for the story.

Plaintiff did not respond to Baier's email, and the email was

4 - OPINION AND ORDER

deleted.

In 2002 Tenny approached Carol Johnson, Vice President and
Acquisitions Editor for Bethany House, a division of Baker Book
House, about writing a novel based on the Book of Esther.
Johnson agreed a novel and a nonfiction book on the subject
should be written.  On October 22, 2002, Tenny began to work on
the novel with Mark Olsen.  Among other things, Tenny and Olsen
discussed Persian and Jewish history, Jewish teachings, and the
circumstances in which a young Jewish girl like Esther would have
been raised as an orphaned exile in Persia during the Fourth
Century, B.C.

After the October 2002 meeting, Olsen created a manuscript
based on historical reference materials, the Book of Esther, and
the ideas he and Tenny discussed at their meeting.  Johnson
supervised the cover design of the novel and suggested it be
named *Hadassah*.  The novel was published in 2004.

On August 18, 2005, Plaintiff filed an action in this Court
alleging copyright infringement by Tenny, Olsen, and Baker Book
House relating to the novel *Hadassah* and various derivative works
including a children's version, a Spanish translation, and an
audio book recording of *Hadassah*.

On July 6, 2006, Defendants filed a Motion for Summary
Judgment.

5 - OPINION AND ORDER

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Easter v. Am. W. Fin.* 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No.1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come

forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


## DISCUSSION

Defendants contend they are entitled to summary judgment on Plaintiff's claims because a reasonable juror could not conclude Defendants had access to Plaintiff's work or that the novel and derivative works contain any protectable elements substantially similar to Plaintiff's work.

## I.    Copyright-Infringement Standards

To succeed on her copyright-infringement claim, Plaintiff must establish: (1) ownership of a valid copyright, (2) Defendants' access to the copyrighted work, and (3) substantial similarity between the copyrighted work and Defendants' work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). As to the first element, Defendants concede Plaintiff's ownership of a valid copyright for purposes of their

7 - OPINION AND ORDER

Motion for Summary Judgment.  With respect to the remaining elements, if Plaintiff cannot establish Defendants had access to her work, she can prevail on her copyright claims only by showing a "striking" similarity between the protected elements in her materials and the novel and derivative works.  *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996).  *See also Baxter v. MCA, Inc.*, 812 F.2d 421, 423-24 (9th Cir. 1987).  "Thus, whether . . . a plaintiff proves access determines the degree of similarity that [s]he must demonstrate between the two works."  *Meta-Film Assoc., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).

## II. Plaintiff Has Not Established Defendants Had Access to Plaintiff's Work.

Plaintiff can establish access by showing Defendants "had an 'opportunity to view or to copy' [her] work."  *See Meta-Film*, 586 F. Supp. at 1355 (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)).  A plaintiff may prove reasonable access in two ways:  "(1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work . . . or (2) the plaintiff's work has been widely disseminated."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

Plaintiff must show Defendants had more than a "bare possibility" of access.  *See Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *incorporated by reference in* 698 F.2d 966 (9th Cir. 1982).  A "tortuous chain of hypothetical transmittals"

8 - OPINION AND ORDER

that creates only a "bare possibility of access" is insufficient to sustain a claim of copyright infringement. *Id*. at 967.

Although Plaintiff does not contend her work was widely disseminated, she maintains Defendants had access to her work. Plaintiff believes she sent her materials to Tenny, and, through Tenny, Mark Olsen and Baker Book House had access to her script, video, and other materials. Plaintiff also contends Olsen is jointly liable in this action because he co-wrote the book with Tenny.

When Plaintiff called the number she was referred to by TBN in 1999 or 2000, a man called her back and told her that he "was just a country preacher that had just got the job." Although Plaintiff testified she "had no idea who he was," she allegedly sent materials that were related to her musical to the man. As noted, Plaintiff cannot remember the address nor does she have a copy of her cover letter transmitting these materials to the man. When she posted her message on the GodChasers message board in December 2000, she was "still unsure about whether or not Tommy Tenny or his organization were even the people that [she had] sent the materials to." Nevertheless, Plaintiff testified she came to believe that Tenny was the man to whom she had spoken and to whom she had sent her materials based on "the tenor of his voice" and the fact that the novel was similar to Plaintiff's musical.

9 - OPINION AND ORDER

Tenny, however, provides evidence that he is not an employee, shareholder, or officer of TBN; has never maintained an office at any TBN location; has never had a telephone number affiliated with TBN through which calls could be transferred to him; does not answer the telephone in his office; does not check his business email himself; and does not review his own business mail. Tenny asserts his contacts with TBN are limited to appearing as a guest on TBN television programs and having his ministry program broadcast by TBN. In addition, Tenny testified he had never spoken to Plaintiff, had never read the script for her musical or seen a video of it, and had never seen any other material referencing Plaintiff's musical. Tenny further testified his staff never provided him with any manuscript or materials prepared by Plaintiff.

Based on this record, the Court concludes Plaintiff's evidence does not establish "a particular chain of events through which Tenny had access to her work. At best, Plaintiff presents only a "tortuous chain of hypothetical transmittals" that merely suggests a "bare possibility of access." *Jason*, 698 F.2d at 967. Accordingly, the Court concludes Plaintiff has not established Defendants had access to her work.

## III. Plaintiff Has Not Established the Novel and Derivative Works Are Strikingly Similar to the Protectable Portions of

10 - OPINION AND ORDER

**Plaintiff's Work.**

Even though Plaintiff has not established Defendants had access to her work, she can establish copyright infringement if she can show the novel and derivative works are strikingly similar to the protectable portions of Plaintiff's work.

**A.    Standards**

To prove copyright infringement without evidence of access, a plaintiff must show the works are strikingly similar in both ideas and expression. *Sid & Marty Krofft*, 562 F.2d at 1164.

Similarity of ideas is shown through an extrinsic test that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works. *Kouf v. Walt Disney Pictures Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Similarity of expression is shown through a subjective, intrinsic test that focuses on "'whether the ordinary, reasonable audience' would find the works [strikingly] similar in the 'total concept and feel of the works.'" *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)(quoting *Kouf*, 16 F.3d at 1045))."

When analyzing a claim of copyright infringement, the Court "must take care to inquire only whether '*the protectible [sic] elements, standing alone*, are substantially similar.' Therefore, . . . a court must filter out and disregard the

11 - OPINION AND ORDER

non-protectable elements in making its substantial similarity determination." *Cavalier*, 297 F.3d at 822 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)(emphasis in original)).

"[C]opyright protection does not extend to historical or contemporary facts, material traceable to common sources or in the public domains, and *scenes a faire*." *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997) (quotations omitted).  When "common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement." *Alexander v. Haley*, 460 F. Supp. 40, 45 (S.D.N.Y. 1978).

Copyright protection does not extend to factual aspects of a work.  17 U.S.C. § 102.  "No claim of copyright protection can arise from the fact that plaintiff has written about . . . historical and factual items, even if we were to assume that [the alleged infringer] was alerted to the facts in question by reading [the infringed work]." *Alexander*, 460 F. Supp. at 45. "Historical facts and theories may be copied as long as the defendant does not bodily appropriate the expression of the plaintiff." *Narell v. Freeman*, 872 F.2d 907, 911–12 (9th Cir. 1989).  "To avoid a chilling effect on authors who contemplate tackling an historical issue or event, broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." *Hoehling v. Universal City*

12 - OPINION AND ORDER

*Studios, Inc.*, 628 F.2d 972, 978 (2d Cir. 1980).  Accordingly,
"the scope of copyright in historical accounts is narrow indeed,
embracing no more than the author's original expression of the
particular facts and theories already in the public domain."  *Id*.
at 974.

    **B.    Analysis**

        Plaintiff attached a list of 185 alleged "comparisons"
between her musical and the novel.  Although the Ninth Circuit
has relied on lists of similarities in the past "for illustrative
purposes," the court has recognized they are "inherently
subjective and unreliable."  *Litchfield v. Spielberg*, 736 F.2d
1352, 1356 (9th Cir. 1984)(citing *Twentieth Century-Fox Film
Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 n.5 (9th Cir. 1983)).
The Ninth Circuit has directed district courts to be
"particularly cautious where, as here, the list emphasizes random
similarities scattered throughout the works."  *Id*. (citation
omitted).

    **1.    Extrinsic Test**

        Many of the similarities between the works
identified by Plaintiff arise from historical fact.  For example,
both works relate the fact that women who were not chosen to be
queen to Xerxes, the King of Persia in the Fourth Century, B.C.,
became his concubines, virtual prisoners, and shut away from
friends and family.  In addition, both works reference the fact

13 - OPINION AND ORDER

that wealthy individuals were carried in litters by servants and observe that anyone approaching the Persian king without permission was killed unless the king granted them an immediate pardon.  As noted, copyright protection does not extend to such historical facts.

In addition, many of the similarities identified by Plaintiff stem from the common source of the Book of Esther. For example, both works include the Biblical narrative that Hadassah is Esther's Jewish name and that Hadassah changes her name to avoid being revealed as a Jew in the King's palace.  The phrase "Who would do such a thing?" appears in both works and is a phrase taken from the Book of Esther.  The incident in which Xerxes takes his ring from Haman and gives it to Mordecai and the role of Memucan as a prince and advisor to Xerxes also are taken from the Book of Esther.  As noted, copyright protection does not extend to material from common sources or "in the public domain."

Plaintiff also identifies similarities between the two works that are considered *scenes a faire*:  *i.e.*, "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic."  *See Alexander*, 460 F. Supp. at 45.  For example, both works note Mordecai, Hadassah's relative and guardian, teaches her about her Jewish history and Jewish traditions.  Similarly, both works include the theme of Hadassah's growing awareness of

14 - OPINION AND ORDER

and faith in God, a standard development in a work based on a book of the Bible. *Scenes a faire* are not protectable material. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).

Plaintiff also alleges the novel's inclusion of the words "wonderful," "joy," and "his presence fills the air" when referring to Hadassah's feelings about God violate Plaintiff's copyright. In a work based on a book of the Bible, however, a character's feelings about God are likely to include joy or wonder when the character believes God is near. In addition, scenes in which the queen candidates fight over jewels and clothing and that describe the sadness of the concubines who are not selected for queen are *scenes a faire* "that necessarily result from the choice of a setting or situation." *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 92 (2d Cir. 1976).

Plaintiff's list of similarities also includes metaphors or cliched language, which like "phrases and expressions conveying an idea that can only be, or is typically expressed in a limited number of stereotyped fashions," are not subject to copyright protection. *Id.* (citing *Reyher*, 533 F.2d at 91). For example, both works include phrases such as "Your Majesty," which is not unusual when a primary character is the King of Persia, and the phrase "fallen in love," which is common in stories about characters who discover love.

On this record, the Court concludes the similarity of ideas

15 - OPINION AND ORDER

between Plaintiff's musical and the novel and its derivative works arise from a common source, historical facts, *scenes a faire*, and cliched language rather than from any protectable ideas or expressions.  Accordingly, a reasonable juror could not conclude Defendants infringed any protectable ideas or expressions of Plaintiff's musical.

　　　　**2.   Intrinsic Test**

　　　　"To constitute infringement of expression, [in the absence of evidence of access], the total concept and feel and of the works must be [strikingly] similar." *Litchfield*, 736 F.2d at 1357.  Here the concept and feel of the works at issue are completely different.  Although both works follow the plot of the Book of Esther, Plaintiff's rendition is a short musical that Plaintiff describes as "[f]unny" in her posting on the GodChasers message board.  Plaintiff's musical devotes little time to Hadassah's youth or candidacy for queen.  In addition, the townspeople in Plaintiff's musical relate through song that Hadassah's parents died of terminal illnesses within a week of each other.  Hadassah also is selected as a candidate for queen, and Mordecai is honored that this gift was bestowed on his family.  The novel, in contrast, is a lengthy and serious period drama.  In the novel, considerable time is devoted to Hadassah's youth and descriptions of the full year between her candidacy and her one night with Xerxes.  In the novel, Hadassah witnesses the

16 - OPINION AND ORDER

murder of her entire family by Haman, a group of palace soldiers order Hadassah to become a queen candidate, Mordecai begs for Hadassah's exemption to no avail, and Hadassah is escorted to Xerxes' castle by soldiers.  Also, Hadassah's selection as queen differs substantially between the two works both in process and tone.

In summary, the Court concludes a reasonable juror could not find a striking similarity of either expression or ideas between Plaintiff's work and Defendants' novel and derivative works because Plaintiff has failed to prove the elements of her claim for copyright infringement.

Accordingly, the Court grants Defendants' Motion for Summary Judgment.


<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#34).

IT IS SO ORDERED.

DATED this 9th day of November, 2006.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


17 - OPINION AND ORDER