IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARILYN OLSON,                                   05-CV-1296-BR

        Plaintiff,                          OPINION AND ORDER

v.

TOMMY TENNEY, MARK OLSEN, and
BAKER BOOK HOUSE COMPANY,

        Defendants.


**MARILYN OLSON**
4108 NE Garden Rd.
Newberg, OR 97132
(503) 538-9454

        Plaintiff, *Pro Se*

**WILLIAM O. GENY**
**SUSAN D. PITCHFORD**
Chernoff, Vilhauer, McClung & Stenzel, LLP
601 S.W. Second Avenue, Suite 1600
Portland, OR  97204
(503) 227-5631


1 - OPINION AND ORDER

**JAY S. BOWEN**
**AMY E. NEFF**
Bowen Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN  37203
(615) 320-3700

**MICHAEL J. KING**
Winters, King & Associates, Inc.
2448 East 81st Street
Cityplex Towers, Suite 5900
Tulsa, OK  74137
(918) 494-6868

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Attorney Fees (#57) and Bill of Costs (#61).

For the reasons that follow, the Court **GRANTS** Defendants' Motion for Attorney Fees and awards attorneys' fees to Defendants in the amount of **$118,655.76**.  The Court also awards costs to Defendants in the amount of **$5,437.83**.

## BACKGROUND

On August 18, 2005, Plaintiff Marilyn Olson filed an action in this Court alleging copyright infringement by Defendants Tommy Tenny, Mark Olsen, and Baker Book House Company relating to Defendant Tenny's novel, *Hadassah:  One Night With The King,* and derivative works such as a Spanish language translation and an audio version.

2 - OPINION AND ORDER

On November 9, 2006, the Court granted Defendants' Motion for Summary Judgment on the ground that Plaintiff failed to establish the elements of her claims for copyright infringement. The court also dismissed this matter with prejudice.

On November 22, 2006, Defendants filed a Motion for Attorney Fees pursuant to the Copyright Act, 17 U.S.C. § 505, and a Bill of Costs.

## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Defendants seek $260,261.67 in attorneys' fees.

**I. The Court, in the Exercise of Its Discretion, Concludes Defendants Are Entitled to Reasonable Attorneys' Fees.**

**A. Standards**

The Supreme Court has adopted an "evenhanded" approach to awards of attorneys' fees in copyright cases. In *Fogerty v. Fantasy, Inc.*, the Supreme Court held "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." 510 U.S. 517, 534 (1994).

As the Supreme Court noted, factors for a court to consider when awarding attorneys' fees to prevailing parties in copyright cases are set out by the Third Circuit in *Lieb v. Topstone* and include "motivation, objective unreasonableness . . . and the need in particular circumstances to advance

3 - OPINION AND ORDER

considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (quoting *Lieb v. Topstone*, 788 F.2d 151, 156 (3d Cir. 1986)). The Ninth Circuit has held, however, "'while courts may take the *Lieb* factors into account, they are nonexclusive. Even so, courts may not rely on the *Lieb* factors if they are not faithful to the purposes of the Copyright Act.'" *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002)(quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)).

To warrant an award of attorneys' fees and costs under the Copyright Act, a defendant need not establish exceptional circumstances. District courts may award attorneys' fees at their discretion as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the objectives of the Copyright Act. *See Historical Res. v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996). *See also Entm't Res. Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997).

**B. Analysis**

**1. Defense Served Important Copyright Objectives**

The Supreme Court has held the defense of a copyright-infringement action may serve the purposes of the Copyright Act.

> In the case before us, the successful defense of "The Old Man Down the Road" increased public exposure to a musical work that could, as a result, lead to further creative pieces. Thus a successful defense of a copyright infringement

>     action may further the policies of the Copyright
>     Act every bit as much as a successful prosecution
>     of an infringement claim by the holder of a
>     copyright.

*Fogerty*, 510 U.S. at 527.  Here the successful defense of Tenny's work, *Hadassah*: *One Night With The King*, similarly "increased public exposure" to a novel "that could, as a result, lead to further creative pieces."  The Court, therefore, concludes defense against this action furthered one of the purposes of the Copyright Act.

    **2.  Motivation**

Defendants do not assert Plaintiff had an improper motive in bringing this action, and the Court does not find any evidence in the record that Plaintiff brought this action in bad faith or with an improper motive.

    **3.  Objective Unreasonableness of Plaintiff's Claims**

Defendants assert Plaintiff's copyright-infringement claims were unreasonable both factually and legally.  The Court agrees.  As noted in the Court's Opinion and Order issued November 13, 2006, Plaintiff did not have any evidence that Defendants had access to her work and, at best Plaintiff presented only a "tortuous chain of hypothetical transmittals" that merely suggested a "bare possibility of access."  *See Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *incorporated by reference in* 698 F.2d 966 (9th Cir. 1982).  Moreover, the Court

also found "a reasonable juror could not conclude Defendants infringed any protectable ideas or expressions of Plaintiff's musical," and "a reasonable juror could not find a striking similarity of either expression or ideas between Plaintiff's work and Defendants' novel or derivative works."

Thus, on this record, the Court concludes Plaintiff's copyright-infringement claims were objectively unreasonable.

### 4.   Need for Compensation and Deterrence

As noted, Defendants' defense against Plaintiff's copyright-infringement claims served important copyright-law objectives.  An award of attorneys' fees to Defendants, therefore, would compensate Defendants for their efforts.  In addition, an award of fees would deter future objectively unreasonable infringement actions.

In summary, even though the Court concludes Plaintiff's claims were not brought in bad faith, the Ninth Circuit has held not every one of the *Lieb* factors needs to be satisfied in order for a court to award attorneys' fees.  *See Fogerty*, 94 F.3d at 558.  The Court has evaluated and weighed the pertinent factors and concludes Defendants are entitled to an award of reasonable attorneys' fees and costs in this matter.

**II.  Defendants Are Entitled to Attorneys' Fees in the Amount of $118,655.76**.

    **A.  Standards**

        The Ninth Circuit has adopted a lodestar/multiplier approach for assessing the amount of reasonable attorneys' fees. *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1993).  The lodestar/multiplier analysis is made up of two parts.  The court first calculates the lodestar amount by multiplying the number of hours that the court finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  The party seeking the award of fees must submit evidence to support the number of hours worked and the rates claimed.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'"  *Id.* (citation omitted).

        To determine the lodestar, the court may consider the following factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or

7 - OPINION AND ORDER

the circumstances;(8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for the award of attorneys' fees. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

After determining the lodestar amount, the court assesses whether it is necessary to adjust the lodestar upward or downward based on factors that are "not already subsumed in the initial calculation of the lodestar." *Morales*, 96 F.2d at 363-64. The lodestar amount is presumed to be the reasonable fee, "and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id.* (citations and internal quotations omitted).

**B.   Analysis**

In their Motion, Defendants originally sought attorneys' fees in the amount of $260,261.67 for work performed by ten attorneys and at least two paralegals from three law

8 - OPINION AND ORDER

firms.  Defendants submitted the Affidavits of Susan D. Pitchford and Michael James King together with statements that set out the hours spent on this matter.  Because Defendants failed to provide the Court with the number of hours each attorney and paralegal billed and the rate at which they billed, the Court requested Defendants to provide the Court with that information.  In response, Defendants filed a Supplemental Schedule to support their Motion and set out the billing rates for 1,059.6 hours of legal work by 12 attorneys and three paralegals.

Although Defendants did not seek to modify the amount of fees they requested in their Motion, the fees set forth in the Supplemental Schedule together with the amounts requested for online research, travel expenses, courier services, and long-distance telephone calls total $259,821.67.  Defendants do not account for the $440 discrepancy between this amount and the $260,261.67 they seek in their Motion.  Because the additional $440 is not supported by the record, the Court reduces the award of attorneys' fees by $440 before beginning its analysis.

Plaintiff objects to (1) the hourly rates, (2) the time allegedly spent to defend this matter, (3) certain costs requested, and (4) the total amount of fees requested.  Plaintiff contends the hourly rates do not reflect the fees charged in Oregon for similar services and asserts the hours allegedly spent to defend this matter are excessive.  In addition, Plaintiff

objects to Defendants' request for reimbursement of expenses such as costs for Lexis and Westlaw research and allegedly excessive deposition time. Even though Plaintiff does not identify any specific entries to which she objects, the Court has an independent duty to review Defendants' Motion for reasonableness. *See Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993).

**1. Hourly Rates**

To determine the reasonable hourly rate, this Court uses the most recent Oregon State Bar Economic Survey published in 2002 as its initial benchmark. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors. Indeed, in *Bell v. Clackamas County,* the Ninth Circuit criticized the use of outdated economic surveys that might not reflect the prevailing rate at the time the award is made. 341 F.3d 858, 868-89 (9th Cir. 2003). The matter here involved relatively straightforward copyright-infringement claims even though they were somewhat time-consuming to defend. The Court, therefore, concludes there is not any justification to award a greater hourly rate than the benchmark set by the 2002 Oregon State Bar Economic Survey adjusted for the four years between publication of the 2002 Oregon State Bar Economic Survey and the resolution of this litigation. To accomplish such an adjustment, the Court adds an annual three percent (3%) inflation factor to the appropriate Oregon State Bar Survey hourly rate for

each provider of legal services.

The Court notes Defendants did not identify the experience or skill levels of two of the attorneys (J. Daniel Beirute and Amy Everhart) or the paralegals who billed time on this matter.  In addition, Defendants did not provide any information regarding the experience of or the reasonable hourly rates for the paralegals (Julie Wolff, Carol Armstrong, and Debby Boyd) in Portland or in Tulsa, Oklahoma, where the paralegals worked.  Accordingly, the Court declines to award fees requested for J. Daniel Beirute, Amy Everhart, Julie Wolff, Carol Armstrong, or Debby Boyd.

M. Jean Holmes had 34 years of experience, William O. Geny had 33 years of experience, and Jay S. Bowen had 32 years of experience during the course of this matter.  According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with this level of experience bills at an average hourly rate of $257.  The Court, therefore, concludes a reasonable rate for the services of Holmes, Geny, and Bowen adjusted for inflation is $289 per hour.

Michael James King had 24 years of experience and Thomas J. Winters had 23 years of experience during the course of this matter.  According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with this level of experience bills at an average hourly rate of $275.  The Court,

11 - OPINION AND ORDER

therefore, concludes a reasonable rate for the services of King and Winters adjusted for inflation is $310 per hour.

Susan D. Pitchford had ten years of experience during the course of this matter. According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with this level of experience bills at an average hourly rate of $225. The Court, therefore, concludes a reasonable rate for the services of Pitchford adjusted for inflation is $253 per hour.

Brenna K. Legaard and Timothy G. Harvey had six years of experience and Amy E. Neff had five years of experience during the course of this matter. According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with this level of experience bills at an average hourly rate of $185. The Court, therefore, concludes a reasonable rate for the services of Legaard, Harvey, and Neff adjusted for inflation is $208 per hour.

Sarah J. Glasgow had 2 years of experience during the course of this matter. According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with this level of experience bills at an average hourly rate of $155. The Court, therefore, concludes a reasonable rate for the services of Glasgow adjusted for inflation is $174 per hour.

In summary, after applying a three (3%) percent per year inflation factor to the 2002 Oregon State Bar Economic

Survey hourly rates and rounding to the nearest dollar, the Court concludes the Plaintiffs are entitled to reasonable attorneys' fees based on the following hourly rates:

| | |
|---|---|
| M. Jean Holmes | - $289 |
| William O. Geny | - $289 |
| Jay S. Bowen | - $289 |
| Michael James King | - $310 |
| Thomas J. Winters | - $310 |
| Susan D. Pitchford | - $253 |
| Timothy G. Harvey | - $208 |
| Brenna K. Legaard | - $208 |
| Amy E. Neff | - $208 |
| Sarah J. Glasgow | - $174 |

The Court disallows attorneys' fees requested in excess of these hourly rates.

### 2. Number of Hours by Attorneys Holmes and Bowen

The record reflects Holmes and Bowen, attorneys with over 30 years of experience, worked over 158 hours and 154 hours respectively. In light of the level of experience of Holmes and Bowen with copyright-infringement cases and the relatively uncomplicated nature of this matter, the Court finds Holmes and Bowen should have been able to complete the necessary work on this matter in substantially less time. Accordingly, the Court reduces their time by 30 percent.

### 3. Computerized Research and Travel Costs

Defendants requested $3,131.32 for the cost of Lexis and Westlaw research. Although these kinds of expenses are usually included in the cost bill, Defendants characterized them as part of their attorneys' fees. In any event, the Court

13 - OPINION AND ORDER

declines to award costs for computerized legal research because such costs reasonably should be included in the overhead and hourly rates of counsel.

In addition, Defendants requested $4,257.82 for travel fees including hotels, cab fares, airport parking, and dining incurred when Defendants' out-of-district attorneys traveled to Portland for depositions and when Defendants' attorneys met in Tulsa, Oklahoma, "to strategize and respond to Plaintiff's discovery requests."  Defendants did not provide the Court with any information as to why out-of-district counsel were necessary in this matter.  *See, e.g., Gates*, 987 F.2d at 1405 (recognizes the Court may apply rates other than those of the forum if local counsel were unavailable either because they were unwilling or unable to perform due to their lack of experience and/or expertise or lacked the "specialization" required to handle the case properly).  *See also Fantasy, Inc. v. Fogerty*, No. C 85-4929-CS, 1995 WL 261504, at *6 (N.D. Cal. May 2, 1995)(applies *Gates* rate analysis to travel-cost analysis).

In addition, Defendants did not establish it was necessary for counsel to travel or to meet in person to strategize, particularly given the availability of technology for conference calls and videoconferences.  Accordingly, the Court, in the exercise of its discretion, declines to award these travel costs and expenses to Defendants.

14 - OPINION AND ORDER

4.      **Number of Attorneys Billing Time in this Matter**

As noted, up to 12 attorneys billed time on this relatively straightforward copyright-infringement case that did not involve complicated facts or novel legal issues. Although the Court recognizes teamwork is appropriate and often necessary in litigation of this type, the Court concludes Defendants have not established the need for so many attorneys billing on this matter. Accordingly, the Court reduces the award by an additional 40% to avoid requiring Plaintiff to pay for duplication of effort among defense counsel and to bring the attorneys' fees in this matter in line with an amount reasonable for an uncomplicated copyright- infringement action.

In summary, the Court awards attorneys' fees to Defendants in the amount of $118,655.76.

**DEFENDANTS' BILL OF COSTS**

I.   **Standards**

Absent a showing of circumstances not relevant here, an award of costs is governed by federal law. *See In re Merrill Lynch Relocation Mgt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987)(dictum).

28 U.S.C. § 1920 allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

15 - OPINION AND ORDER

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The court has broad discretion to allow or to disallow a prevailing party to recoup costs of litigation. The court, however, may not tax costs beyond those authorized by § 1920. *Frederick v. City of Portland*, 162 F.R.D. 139, 142 (D. Or. 1995).

**II.  Analysis**

Plaintiff objects to Defendants' requested costs for deposition transcripts and for copy costs.

Although Plaintiff concedes the costs of transcripts are allowable under § 1920, Plaintiff contends the transcript costs are excessive here because the time Defendants spent deposing Plaintiff was excessive. The Court notes Plaintiff's testimony regarding issues such as access to her work and the similarities between her work and that of Defendants was not a model of clarity. The Court, therefore, finds Defendants' depositions of

16 - OPINION AND ORDER

Plaintiff were not excessive in light of her unclear responses regarding the basis of her claims and the attenuated nature of her assertions regarding access to her work and the originality of her work.  Accordingly, the Court declines to reduce Defendants' requested transcript costs.

Plaintiff notes Defendants waived one-half of their copy costs, objects to the cost for three copies of the documents allegedly produced to her, and asserts Defendants should recover only a third of these costs at most.  The Court finds Defendants' reduction of their copy costs by one-half is a sufficient adjustment to address issues of fairness and awards Defendants all of their requested copying costs as adjusted.

Accordingly, the Court awards costs to Defendants in the amount of **$5,437.83**.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Attorney Fees (#57) and Defendants' Bill of Costs (#61) and **AWARDS** attorneys' fees to Defendants in the amount of **$118,655.76**

17 - OPINION AND ORDER

and costs in the amount of **$5,437.83**.

IT IS SO ORDERED.

DATED this 1st day of March, 2007.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER